1  Paul Henreid, Esq. SBN 214527

2  1610 Nw 33rd St

3  Lawton, Oklahoma 73505

4  (661) 874-5233

5  Plaintiff In Propria Persona

6

7

8  UNITED STATES DISTRICT COURT

9  EASTERN DISTRICT OF CALIFORNIA

10

11  Paul Henreid,                          Case No. 23-1228

12          Plaintiff,                     Jury Trial Requested

13     v.                                  **CIVIL COMPLAINT:**

14  Raymond Neal Haynes;                   1. Defamation Per Se – Private Figure
    and Does 1-10,                         2. Invasion of Privacy – False Light and
15                                            Intrusion Upon Seclusion
            Defendants.                    3. Intentional Infliction of Emotional Distress
16                                         4. Fraud

17

18

19
## Table of Contents
20
JURISDICTION...................................................................................................... 3
21
   I.   Diversity of Citizenship .................................................................. 3
   II.   Plaintiff............................................................................................. 3
22
     A.   Citizen of Oklahoma............................................................. 3
23
     B.   Private Figure........................................................................ 3
     C.   Licensed California Attorney................................................ 3
24
     D.   Clean Criminal Record......................................................... 3
25
   III.   Defendants....................................................................................... 3
VENUE ................................................................................................................... 4
26
TOLLING ............................................................................................................... 4
27
NO LITIGATION PRIVILEGE ............................................................................ 4
28
CALIFORNIA GOVERNMENT TORT CLAIMS ACT .................................... 5

ATTORNEY OBLIGATION TO REPORT *CONDUCT INVOLVING DISHONESTY* ................. 5

CRIMES COMMITTED IN CIVIL DEFAMATION CASE ........................................ 6

   I.   "Deceit … with intent to deceive the court."  Cal Bus & Prof. Code §6128. ...................... 6

   II.  "knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor." Pen. Code, § 13303. ...... 6

   III.   California Penal Code 653.2 Use of electronic communication to harass: ...................... 7

SUMMARY OF COMPLAINT ........................................................................ 7

GENERAL AVERMENTS ............................................................................ 9

   IV.  Damages ......................................................................................... 11

   V.   Most Defamatory Words in English ........................................................ 11

   VI.  Malice Aforethought, Oppression, and Fraud ........................................... 12

   VII.  Permanent Damage .......................................................................... 12

   VIII.   Repeated Wrongs Are Not Inadvertent .................................................. 13

   IX.  Court of Appeal Abrogates Duty to Stop and Report Professional Misconduct ............. 13

   X.   Biased Trial Judge Turned Laws Upside Down .......................................... 14

NATURE OF LAWSUIT ............................................................................ 15

   I.   Underlying Civil Action ..................................................................... 15

   II.   Issue Was *Criminal Convictions*, Not Dismissed Charges. ............................. 15

   III.  Compelling Production of Documents From *Cases Made Confidential By Law* Is a Crime. Pen. Code, § 13303. ......................................................................... 17

   IV.  Dismissed Charges Become Convictions in the Twilight Zone ...................... 18

   V.   Determining A Criminal Record Is a Matter of Law Involving Statutory Interpretation 20

   VI.  Haynes Filed a Motion for Sanctions Because Plaintiff Filed a Motion for Summary Judgment or Adjudication and a Required Motion Seeking Court Order to Conduct Discovery of Defendant's Financial Condition ................................................ 21

   VII.  Judge Sotelo Was the Master of the Plaintiff's Claim ................................ 21

   VIII.   Rejects Offer to End Litigation at No Cost A Guaranteed Winner ............................ 23

   IX.  Haynes' Five-Months Late Response to Appellant's Proposed Settled Statement on Appeal Fabricates Sex Crimes to Permanently Malign Plaintiff Over The Internet and Prejudice the Court of Appeal ............................................................... 23

   X.   Haynes Hijacks Plaintiff/Appellant's Settled Statement By Deceit Through An Unauthorized *Proposed Substitute* Still Not on the Court Docket .................................... 24

   XI.  Unauthorized (Hijacked) Settled Statement Repeats Defamation Despite Objection and Agreement at September 30, 2022 Hearing ................................................ 25

   XII.  Demand to Retract Defamatory Statements from Public Court Record ...................... 27

   XIII.   Criminal Acts and Deceiving Courts Is *Just Good Lawyering* .................................. 27

   XIV.   Plaintiff's Motion to Strike and for Sanctions ....................................... 27

   XV.  New Trial Judge Stops and Redacts Lies ............................................... 28

PRAYER FOR RELIEF .............................................................................. 28

CERTIFICATION AND NOTICE OF INTERESTED PARTIES ................................. 28

CERTIFICATION AND CLOSING .................................................................. 28

CIVIL COMPLAINT

**JURISDICTION**

**I.      Diversity of Citizenship**

"[T]he matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States."  28 U.S.C. § 1332(a)(1); Fᴇᴅ. R. Cɪᴠ. P. 8(a).

**II.      Plaintiff**

A.  Citizen of Oklahoma

Plaintiff is a citizen of the State of Oklahoma, Comanche County, and has been at all times relevant to this Civil Action and the Underlying Civil Action minding his own business half a country away in Oklahoma.

B.  Private Figure

The plaintiff is a private figure and has never been a public figure.  The plaintiff has never been a candidate on a ballot for public office nor held any position of public office.  The plaintiff has never been a celebrity, professional athlete, politician, judge, news media writer, or television/movie Talent.

C.  Licensed California Attorney

The plaintiff has been an active member of the State Bar of California in good standing since 2001 with no disciplinary actions or complaints.  The plaintiff is licensed in all United States District Courts in the State of California and the United States Court of Appeals for the Ninth Circuit.

D.  Clean Criminal Record

The criminal history record of the plaintiff was the central issue in the Underlying Civil Action and well settled by Judicial Notice, official government records, and criminal background reports that the plaintiff "did not identify with any criminal history record" and has no arrests, charges, indictments, pleas, or convictions.

**III.      Defendants**

Upon information and belief, the defendant Raymond Neal Haynes, Esq. ("Haynes") is a

3

1    citizen of the State of California who resides in and has his principal place of business in Elk

2    Grove, County of Sacramento, California.  Haynes is a veteran California attorney, and trial and

3    appellate counsel in the Underlying Civil Action (Los Angeles Superior Court Case No.

4    19STCV20592 and California Court of Appeal Case No. B314741).

5            [Reserved]

6            Upon information and belief, each fictitiously named Doe defendant is responsible in

7    some manner for the occurrences and damages alleged herein, and was acting as agent for the

8    other(s).  The plaintiff is unaware of the true names or capacities of Does and will seek leave to

9    amend if/when such information is ascertained.

10                                            **VENUE**

11           Venue is proper under 28 U.S.C. § 1391(b)(1) because "A civil action may be brought in

12   … a judicial district in which any defendant resides, if all defendants are residents of the State in

13   which the district is located."  "Generally, when venue is proper in more than one county, a

14   plaintiff has the choice of where to file the action from among the available options."  *Battaglia*

15   *Enters., Inc. v. Superior Court*, 215 Cal. App. 4th 309, 313 (2013).  "There is a presumption that

16   the county in which the plaintiff chose to file the action is the proper county. …The burden rests

17   on the party seeking a change of venue to defeat the plaintiff's presumptively correct choice of

18   court."  *Id*.

19                                            **TOLLING**

20           California Emergency Rule of Court No. 9 Related to COVID-19, equitable tolling,

21   statutory tolling, and the ongoing underlying litigation in the trial court Los Angeles Superior

22   Court Case No. 19STCV20592 and California Court of Appeal Case No. B314741 ("Underlying

23   Civil Action"), including prompt and substantial actions, including but not limited to motions,

24   requests, letters, phone calls, and e-mails, by the plaintiff to remove, redact, remedy, and

25   otherwise correct or mitigate the effects of the defendants' actions, toll statutes of limitation.

26                                    **NO LITIGATION PRIVILEGE**

27           The litigation privilege applies to statements made in furtherance of litigation, i.e.,

28   ascertaining the truth (facts).  The litigation privilege does not protect premeditated deceit that

                                                  4

                                                                            CIVIL COMPLAINT

1  does the opposite by changing the truth in Judicial Notice to something not true.  The defendant's

2  deceit had no "reasonable relation to the action [the case was over and criminal history record

3  previously established in Judicial Notice, discovery, official government reports, etc.] … [is not]

4  permitted by law [criminal acts under Cal. Bus. & Prof. Code § 6128, et al.] if made to achieve

5  the objects of the litigation."  *Smith v. Hatch*, 271 Cal. App. 2d 39, 45 (1969).  Premeditated and

6  repeated misrepresentations while on appeal that change well settled facts in Judicial Notice

7  thwart *the objects of the litigation* (ascertaining truth), defeat the purpose of Judicial Notice, and

8  are unlawful under several statutes, including Section 6128 of the Business & Professions Code et

9  al., and are therefore not *permitted by law*.  (*Id*.)  Each of these threshold issues must be satisfied

10  to trigger the litigation privilege; this case does not satisfy any.

### CALIFORNIA GOVERNMENT TORT CLAIMS ACT

12  The plaintiff has complied with the California Government Tort Claims Act.  Cal. Gov't

13  Code § 810 et seq.  For reasons stated herein, the plaintiff "did not know or have reason to know,

14  within the period for the presentation of a claim to the employing public entity as a condition to

15  maintaining an action for such injury against the employing public entity … that the injury was

16  caused by an act or omission of the public entity or by an act or omission of an employee of the

17  public entity in the scope of his employment as a public employee."  Cal. Gov't Code § 950.4.

### ATTORNEY OBLIGATION TO REPORT *CONDUCT INVOLVING DISHONESTY*

19  Effective August 1, 2023, Rule 8.3 of the California Rules of Professional Conduct -

20  Reporting Professional Misconduct requires:

> A lawyer shall, without undue delay, inform the State Bar, or a tribunal with jurisdiction to investigate or act upon such misconduct, when the lawyer knows of credible evidence that another lawyer has committed a criminal act or has engaged in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation or misappropriation of funds or property that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

25  *See* https://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Ethics/Rule-83-Required-

26  Reporting.

27  Attorneys have been disbarred for far less egregious *conduct involving dishonesty, fraud,*

28  *deceit*.  *In the Matter of Wyshak*, 4 Cal. State Bar Ct. Rept. 70, 78, 81 (Rev. Dept. 1999), an

CIVIL COMPLAINT

attorney was disbarred for encouraging a false sexual harassment claim to induce the opposing party to drop an unlawful detainer action against his client.  Attorney Haynes did much more than encourage a false claim; he made the false claims.

## CRIMES COMMITTED IN CIVIL DEFAMATION CASE

**I.      "Deceit … with intent to deceive the court."  Cal Bus & Prof. Code §6128.**

The fabricated sex crimes in the Hijacked Settled Statement, page 5 ¶ 4, try to change facts in official government records in Judicial Notice and violate Section 6128 of the Business & Professions Code because "Every attorney is guilty of a misdemeanor who either: (a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court." Defendant knew no such allegations ever existed let alone formal criminal "conviction for statutory rape, and the charges for distributing child pornography and child molestation ....  child abuse."  Each lie and deceitful misrepresentation should be a separate criminal count, an easy criminal prosecution because no witnesses are necessary to prove guilt; their repeated misconduct is *res ispa loquitur* because the written court record speaks for itself.

California Civil Code section 1710 (fraud) defines *deceit* as:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

> 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

> 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

**II.      "knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor." Pen. Code, § 13303.**

Under California law it is a crime to disclose "cases made confidential by law."  Cal. Rules of Court, rule 2.503; Pen. Code, § 13303.  Penal Code section 13303 was violated in discovery by compelling the production of documents regarding dismissed charges from a decades-old case in a different state "made confidential by law."  Cal. Rules of Court, rule 2.503; Mo. Rev. Stat. §§ 610.140, 610.120, 610.105; *State ex rel. Knight v. Barnes*, 723 S.W.2d 591,

CIVIL COMPLAINT

592 (Mo. Ct. App. 1987).  These records were irrelevant anyway because they were not *criminal convictions*.  Penal Code section 13303 states:

> Any person authorized by law to receive a record or information obtained from a record who knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor.

*State ex rel. Knight v. Barnes*, 723 S.W.2d 591, 592 (Mo.Ct.App. 1987) (underline added) states:

> With this background, the records of arrest, dismissal or nolle prossed became closed to all save the person charged. Clerks and judges were placed in an untenable position of not being able to acknowledge existence of those records, even to themselves.  It is, therefore, quite obvious that the intent of the legislature was to <u>close these records to the general public</u>. Section 610.120, RSMo 1986, read in its entirety makes it abundantly clear that this is so. …. <u>The word 'litigation' cannot be construed so broadly to include a civil action</u>…. For it is the state through Chapter 610 that <u>mandates closed criminal records. No person, insurance company, or other entity, save those exceptions noted, is permitted access to criminal files closed</u> pursuant to Chapter 610.

### III.   California Penal Code 653.2 Use of electronic communication to harass:

> (a) Every person who, with intent to place another person in … harassment, by a third party, electronically distributes, publishes, e-mails, hyperlinks, or makes available for downloading, personal identifying information, including … an electronic message of a harassing nature about another person … is guilty of a misdemeanor punishable by up to one year in a county jail, by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment. …

> (1) "Harassment" means a knowing and willful course of conduct directed at a specific person that a reasonable person would consider as seriously alarming, seriously annoying, seriously tormenting, or seriously terrorizing the person and that serves no legitimate purpose.
> (2) "Of a harassing nature" means of a nature that a reasonable person would consider as seriously alarming, seriously annoying, seriously tormenting, or seriously terrorizing of the person and that serves no legitimate purpose.

## SUMMARY OF COMPLAINT

With premeditation and malice aforethought, attorney Raymond Haynes intentionally and repeatedly fabricated the most defamatory statements about the plaintiff in the public court record

CIVIL COMPLAINT

1   by stating he had a "*conviction for statutory rape, and the charges for distributing child*

2   *pornography and child molestation*" and *child abuse* knowing no such allegations ever existed,

3   let alone formal charges, arrests, indictments, pleas, or convictions.

4        Haynes knew no document ever mentioned the crimes he repeatedly falsified.

5        Haynes' words are the most defamatory in the English language and the most heinous sex

6   crimes.

7        Haynes' unnecessarily used the plaintiff's name in connection with his defamation instead

8   of a generic reference to plaintiff or appellant, which proves his malice aforethought.

9        Haynes knows any reader will attribute his defamation to the plaintiff and that internet

10  searches of the plaintiff's name are more likely yield *snipids* of his defamation in internet search

11  results.

12       Haynes repeatedly lied, even after objections, demands, and a motion to strike and for

13  sanctions.  On October 11, 2022, the plaintiff e-mailed Haynes a *Demand to Retract Defamatory*

14  *Statements From Public Court Record*.  Haynes responded the same day with no apology or

15  agreement to right his wrongs.  Instead, Haynes claimed his lies were "just good lawyering"

16  protected by the litigation privilege and threatened Rule 11 sanctions.

17       Haynes wants to use the judiciary's text-searchable public record as a conduit to

18  permanently spread his libel across the worldwide web (internet).

19       Haynes knows his lies would be believed by all readers because no one would doubt such

20  statements from a tribunal or attorney of record because they not write such statements in the

21  public court record unless verifiably true.

22       Haynes has a history of filing frivolous Motions for Sanctions in the Underlying Civil

23  Action against the plaintiff for filing a Motion for Summary Judgment, or in the Alternative

24  Summary Adjudication on the grounds that "The law is the proper application of the law to the

25  fact of the [plaintiff]'s criminal record … is not a factual matter for the jury and thus is properly

26  determined by the … judge."  State v. Van Buren, 98 P.3d 1235, 1241 (Wash. Ct. App. 2004);

27  Haynes' Motion for Sanctions also argued the plaintiff's Motion for Court Order to Conduct

28  Discovery of Defendant's Financial Condition was frivolous, even though Section 3295(c) of the

8

CIVIL COMPLAINT

1     California Code of Civil Procedure requires this motion.

2        In the Motion for Sanctions, Haynes argued the litigation was costing his client too much

3     money; yet, his client rejected an offer to end the litigation a guaranteed winner at no cost after

4     the jury trial despite legal authority requiring "the attorney to pursue such a course of action

5     first." *Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577 (1976) *citing* ABA Code of

6     Prof. Ethics, canon 15; Cal. State Bar, Rules Prof. Conduct, rule 6-101(2).

7        At a mandatory pre-trial settlement conference, the defendant in the Underlying Civil

8     Action offered nothing and threatened he was "ready, willing so and able to pursue his claim for

9     abuse of process if this matter is pursued to trial." This hubris resulted from a biased trial judge,

10     Hon. David Sotelo (Ret.) (hereinafter "Judge Sotelo"), always ruling in their favor.

11        Judge Sotelo *retired* one day after the plaintiff filed Appellant's Opening Brief in the

12     California Court of Appeal, Case No. B314741.

13        While the defamation detailed below started during the case, the most defamatory

14     statements were made repeatedly while the case was pending in the Court of Appeal from

15     September 2022 to January 13, 2023 when the trial court delivered an Unauthorized (Hijacked)

16     Settled Statement of Appeal for the Record on Appeal, which unbelievably still contained the

17     libelous statements to November 30, 2023 oral appellate argument when Haynes admitted making

18     *mistakes* regarding his defamatory statements and then seconds later repeated the defamation.

19               **GENERAL AVERMENTS**

20        Unless stated otherwise, the causes of action apply to all defendants.

21        "A statement in a pleading may be adopted by reference elsewhere in the same pleading."

22     FED. R. CIV. P. 10(c). Accordingly, all statements and allegations herein are realleged and

23     incorporated against all defendants.

24        While many of the statements and allegations herein describe erroneous legal rulings best

25     reserved for a Reviewing Court, they are evidence of judicial bias that led to the tortious,

26     unethical, and criminal misconduct. The erroneous legal rulings are described herein because "In

27     alleging fraud or mistake, a party must state with particularity the circumstances constituting

28     fraud or mistake." FED. R. CIV. P. 9(b).

CIVIL COMPLAINT

1     The plaintiff learned of the defamatory statements included in the unauthorized Settled

2  Statement on Appeal (despite numerous prior objections and demands to stop and retract) on June

3  1, 2023 when responding to the new trial court judge's Order Granting Plaintiff's Motion to

4  Strike that authorized the plaintiff to identify and redact the defamatory content from documents

5  filed by the defendant.  In this response, the plaintiff also identified and redacted defamatory

6  statements made by Judge Sotelo in prior court rulings.  The plaintiff reserved the right to update

7  his response upon discovery of additional defamatory statements within the scope of the Order.

8     Even after demands to retract, Haynes repeatedly and maliciously continued fabricating

9  and disseminating the most heinous criminal sex crimes that were never in any document or the

10  plaintiff's well established criminal history record in Judicial Notice.

11     Instead of apologizing and fixing his deceit, Haynes threatened sanctions (again).  In

12  Haynes' last trial court brief, an Opposition to Plaintiff's Motion to Strike and for Sanctions that

13  was not timely served until the hearing and littered with lies, he had the hutzpah to still argued his

14  *conduct involving dishonesty* was "in my opinion then and now, was just good lawyering."

15  (Opposition page 7 line 19)

16     While on appeal from an entry of judgment by the Los Angeles Superior Court after a

17  special jury verdict, Haynes had no reason to say anything, let alone fabricate false facts and sex

18  crimes in the Record on Appeal, misrepresenting the disposition of a case from almost thirty

19  years ago in a different state that was dismissed and statutorily closed and *made confidential by*

20  *law* for decades – a case that never utilize any discovery or fact-finding procedures – no

21  depositions, no witnesses, no jury trial, no discovery, no affidavits or declarations, no written

22  discovery, etc., prior to its dismissal.  Yet, Haynes repeatedly wrote *facts* without knowing

23  anyone or anything, other than what he read in decades-old newspaper stories, which stated the

24  opposite of the defamatory statement at issue in the Underlying Civil Action.  Haynes and Judge

25  Sotelo fabricated ages of people they never knew, never met, never saw, and could not identify by

26  name or physical description. Haynes fabricated arrests and convictions for crimes never alleged

27  or stated in any document.

28     None of the crimes fabricated by Haynes were among any of the charges dismissed and

10

1   *made confidential by law* decades earlier in Missouri. Cal. Rules of Court, rule 2.503; Cal. Penal

2   Code § 13303; Mo. Rev. Stat. §§ 610.140, 610.120, 610.105; *State ex rel. Knight v. Barnes*, 723

3   S.W.2d 591, 592 (Mo. Ct. App. 1987).

4          Judge Sotelo should never have allowed inquiry into the dismissed charges because they

5   were not *criminal convictions*, the statement at issue, and were therefore irrelevant.  He allowed

6   such inquiry, discovery, and ultimately introduction of the dismissed charges into evidence at the

7   jury trial, against the mandates of the unambiguous laws because he was biased.

8          **IV.     Damages**

9          The plaintiff has suffered actual economic and non-economic damages such as loss of

10   income and damage to reputation, continues to suffer damages, and will suffer lifelong

11   irreversible damages because of the intentional, premeditated, and repeated tortious, unethical,

12   and criminal actions.  The plaintiff has suffered severe emotional pain and distress, including but

13   not limited to shock, shame, nervousness, horror, fright, worry, grief, anguish, mood swings,

14   anger, violent ideation, anxiety, depression, humiliation, paranoia, intrusive thoughts, homicidal

15   ideation, cognitive dissonance, gaslighting, sleep deprivation, and mania.

16          Plaintiff has spent twice as much time dealing with the new lies fabricated after the jury

17   trial for Defamation than drafting appellate briefs.

18          The premeditated fabrications have been seen over the internet and understood by

19   hundreds if not thousands, including but not limited to persons associated with the judiciary.

20   Some of the lies already reached the internet and were twisted in an internet search result into

21   *child sexual assault*, words never used before in any document pertaining to the plaintiff.

22          **V.     Most Defamatory Words in English**

23          After the jury trial from September 2022 to January 2023, with the case on appeal when

24   the defendants should not have been saying anything, they fabricated the most defamatory sex

25   crimes and words in the English language in the trial court record and the Hijacked

26   (Unauthorized) Settled Statement for the Record on Appeal by misrepresenting the plaintiff [first

27   and last name] had a "*conviction for statutory rape, and the charges for distributing child

28   pornography and child molestation*" and *child abuse* knowing such allegations never existed, let

11

1   alone formal criminal charges, pleas, or convictions, and knowing no document ever referenced

2   his fabricated words or crimes.

3   **VI.    Malice Aforethought, Oppression, and Fraud**

4   Haynes knows his text-searchable fabrications in the public court record could become

5   searchable over the internet. He knows when a judge or attorney of record writes such statements

6   in a public court record, internet search engines republish *snipids* from court records in response

7   to internet searches.

8   Haynes knows no one would doubt the veracity of their premeditated statements because

9   an attorney of record or judge would never write such statements unless verifiably true.

10  Haynes knows the "contents of public records are generally thought to be reliable, and

11  statements based thereon cannot be deemed to have been made with actual malice." *Rosenaur v.*

12  *Scherer*, 88 Cal. App. 4th 260, 276 (2001). Haynes knows that if his lies reach the internet some

13  states offer affirmative defenses to those who rely upon the *contents of public records* as an

14  immunity to liability. Haynes is using his law license and judicial system as weapons to inflict

15  permanent damage on a litigant and officer of the court for no reason. If anyone should be upset

16  with this litigation, it should be the plaintiff/appellant, not the defendant/respondent who was

17  handed a victory they should have lost as a matter of law because even without an expungement

18  neither part of the defamatory statement at issue could have been true as a matter of law. Judicial

19  Notice conceded there were never multiple convictions and Invasion of Privacy is not a sex

20  offense.

21  The criminal history record of the plaintiff was the central issue in the Underlying Civil

22  Action and well settled by Judicial Notice, official government records, and criminal background

23  reports that the plaintiff "did not identify with any criminal history record" and has no arrests,

24  charges, indictments, pleas, or convictions. Haynes intentionally and with malice aforethought

25  and premeditation changed no criminal history record to the worst criminal history record with at

26  least four of the worst and most defamatory crimes that have never been alleged or stated in any

27  document let alone filed in a formal proceeding.

28  **VII.    Permanent Damage**

CIVIL COMPLAINT

1   Haynes knows there is no Right to Be Forgotten law

2   (https://en.wikipedia.org/wiki/Right_to_be_forgotten) in North America and that internet search

3   providers are immune from civil liability for republishing content or search snipids under federal

4   law, even if the content is verifiably false.  Section 230 of Title 47 of the United States Code

5   enacted as part of the Communications Decency Act of 1996, which is Title V of the

6   Telecommunications Act of 1996.

7   Haynes knows victims of such WorldWide defamation over the internet are without legal

8   recourse forever and repeatedly tried to re-write official government records in Judicial Notice.

9   **VIII.   Repeated Wrongs Are Not Inadvertent**

10   Undeniably, the defendant knew his statements were false.  The plaintiff's criminal record

11   was the central issue in the Underlying Civil Action.  Nearly every document from start to finish

12   addressed, official government records, and Judicial Notice establish these facts that Haynes and

13   Judge Sotelo have repeatedly tried changing by adding new crimes to a dismissed case from

14   another state almost three decades ago that was *made confidential by law*.  Cal. Rules of Court,

15   rule 2.503; MO. REV. STAT. §§ 610.140, 610.120, 610.105; *State ex rel. Knight v. Barnes*, 723

16   S.W.2d 591, 592 (Mo. Ct. App. 1987).

17   **IX.   Court of Appeal Abrogates Duty to Stop and Report Professional Misconduct**

18   On November 30, 2023, during oral argument in Court of Appeal Case No. B314741,

19   Haynes admits making *mistakes* in his defamatory statements, and seconds later repeats the

20   defamation.  This was the fifth time since September 2022 Haynes repeated his "deceit … with

21   intent to deceive the court."  Cal. Bus. & Prof. Code § 6128.  Haynes makes a mockery of the

22   judiciary, lying to its face repeatedly and then claiming the litigation privilege protects his

23   inadvertent mistakes.  Haynes uses the judicial system as a conduit to the internet to permanently

24   malign a litigant and officer of the court.

25   Haynes continues this criminal, unethical, and tortious behavior because the Court of

26   Appeal has done nothing to stop, sanction, or redact it.  To the contrary, after nine months of

27   notice, the Court of Appeal does not:

28   give notice in writing if it is considering imposing sanctions [for] (2)

13

1
2

Including in the record any matter not reasonably material to the appeal's determination … or (4) Committing any other unreasonable violation of these rules.

3

Cal Rules of Court, Rule 8.276.

4

The Court of Appeal abrogates its duty to:

5
6
7

without undue delay, inform the State Bar ... of credible evidence that another lawyer has committed a criminal act or has engaged in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation ... that raises a substantial question as to that lawyer's honesty, trustworthiness.

8

*See* Rule 8.3 of the California Rules of Professional Conduct - Reporting Professional

9

Misconduct (effective August 1, 2023).

10

**X.    Biased Trial Judge Turned Laws Upside Down**

11

Newspaper articles about matters closed and *made confidential by law* three decades

12

before in a different state became the central issue in the Los Angeles jury trial despite stating the

13

opposite of the defendant's defamatory statement because what they refer to as dismissed the

14

defendant refers to as *convictions*.  The inflammatory articles were irrelevant, especially parts not

15

pertaining to the disposition of the case, lacked foundation, and were quadruple hearsay.  Yet,

16

Judge Sotelo allowed the salacious statements in newspapers into evidence, despite being

17

irrelevant to the plaintiff's criminal history record.  Judge Sotelo allowed them into evidence to

18

prejudice and inflame the jury, which happened.

19

Judge Sotelo did not allow the plaintiff to show the jury laws.  This is unconscionable,

20

something out of a third world country governed by lawlessness.  Judge Sotelo did not want the

21

jury to uncover his bias and erroneous legal rulings by reading laws stating "the effect of such

22

[Expungement] order shall be to restore such person to the status he or she occupied prior to such

23

arrests, pleas, trials, or convictions <u>as if such events had never taken place</u> ... <u>and no such inquiry</u>

24

<u>shall be made for information relating to an expungement.</u>"  MO. REV. STAT. § 610.140.8

25

(underline added).  Judge Sotelo ruled against other laws that required dismissed criminal cases

26

remain closed and confidential in civil actions.  MO. REV. STAT. §§ 610.105, 610.120; *State ex*

27

*rel. Knight v. Barnes*, 723 S.W.2d 591, 592-593 (Mo. Ct. App. 1987).  Had the jury been allowed

28

to see the laws, they would have realized the biased rulings, which is why Judge Sotelo censored

14

1  the plaintiff from showing the jury laws.

2      Haynes' malicious intent is undeniable because he continued lying after oral and written

3  objections, motions, demands, and requests to retract, redact, rescind, remove, modify, strike, or

4  otherwise correct their defamatory statements.

5      Attorney Haynes even duped the new trial court judge into believing his lies, which she

6  relied upon in drafting the background section of her initial ruling earlier this year in 2023.  The

7  new trial judge amended the tentative ruling once alerted to the misrepresentations by Haynes, the

8  same misrepresentations at issue in the motion being litigated, which were the same

9  misrepresentations objected to at the hearing September 30, 2022 set sua sponte by Judge Sotelo.

10  The repeated wrongs are shameless and the farthest from inadvertent.

11  **NATURE OF LAWSUIT**

12      **I.      Underlying Civil Action**

13      This lawsuit arises from occurrences in the Underlying Civil Action, an ongoing case in

14  the trial court, Los Angeles Superior Court Case No. 19STCV20592 filed June 12, 2019, and

15  California Court of Appeal, Case No. B314741 filed August 9, 2021 after a Special Verdict by

16  Jury on June 11, 2021 and Entry of Judgment by Judge Sotelo on June 30, 2021 (collectively

17  "Underlying Civil Action").

18      In the Underlying Civil Action, the plaintiff sued Richard Skaggs for Defamation Per Se

19  and Invasion of Privacy – False Light because on February 6, 2019 Skaggs falsely wrote to others

20  that plaintiff had "criminal convictions for sex crimes with minors."  The jury determined this

21  statement was false, but found the plaintiff did not meet the heightened burden of proving with

22  clear and convincing evidence that Skaggs knew his statement was false or acted in reckless

23  disregard of the truth.  The heightened burden of proof resulted from a ruling by Judge Sotelo that

24  the plaintiff was a public figure, an erroneous legal ruling at issue in Court of Appeal Case No.

25  B314741.

26      **II.      Issue Was _Criminal Convictions_, Not Dismissed Charges.**

27      Even though Haynes attempted to alter the statement at issue in the Short Statement of the

28  Case to the jury and Judge Sotelo previously attempted to alter this single sentence in page 3 of a

15

1   ruling on plaintiff's Motion for Summary Judgment or Adjudication on or about February 2,

2   2021, the false statement at issue was that plaintiff had "criminal convictions for sex crimes with

3   minors."

4       A dismissed charge is the opposite of a conviction and should have been at all times

5   irrelevant.  If Judge Sotelo had followed the most basic rule of evidence – Relevance – the

6   ensuing litigation would never have occurred.  There was no reason to refer to, inquire about, or

7   state anything about dismissed charges in a different state that have been statutorily closed and

8   confidential for nearly three decades because the false statement at issue was about criminal

9   convictions not dismissed charges.  Dismissed charges from decades ago that were closed and

10  made confidential by law should have never entered into the civil defamation case, not just

11  because three statutes and one case mandate they be kept closed and confidential, but because

12  they were completely irrelevant to determining whether the defamatory statement alleging

13  criminal convictions was true or false.

14      Missouri Revised Statute section 610.140.8 (Expungement Law – underline added) states:

> The [Expungement] order shall not limit any of the petitioner's rights
> that were restricted as a collateral consequence of such person's
> criminal record, and such rights shall be restored upon issuance of
> the order of expungement. … an order or expungement granted
> pursuant to this section shall be considered <u>a complete removal of all
> effects of the expunged conviction</u>. … the effect of such order shall
> be to restore such person to the status he or she occupied prior to such
> arrests, pleas, trials, or convictions <u>as if such events had never taken
> place</u>. No person as to whom such order has been entered shall be
> held thereafter under any provision of law to be guilty of perjury or
> otherwise giving a false statement by reason of his or her failure to
> recite or acknowledge such arrests, pleas, trials, convictions, or
> expungement in response to an inquiry made of him or her and <u>no
> such inquiry shall be made for information relating to an
> expungement</u>.

23  Judge Sotelo did not like this law or its application to the plaintiff so he did not follow it and did

24  the opposite by making it the center of attention, even though the only relevant question was

25  whether the statement at issue (whether the plaintiff had *criminal convictions for sex crimes with*

26  *minors*) was true or false.

27      Judicial Notice conceded the plaintiff never had multiple convictions and that Invasion of

28  Privacy is an offense against the person in Chapter 565 of the Missouri Revised Statutes, not a

16

1    sexual offense in Chapter 566.  So why was the jury tasked with answering a question of law

2    already answered by Judicial Notice?  Judge Sotelo was biased and lacked judicial ethics.

3        Judge Sotelo cited an out-of-jurisdiction case sua sponte that rejected the application of an

4    arrest expungement statute to civil cases on the grounds the court would not extend the "fiction."

5    However, to the extent laws are man-made, they are all fictional.  Making laws, or making up

6    laws, is the role of the Legislature.  The court's rationale is the pot calling the kettle black

7    because the fiction is when a court hijacks the role of the Legislature and invents fictions that

8    expand or contract unambiguous laws, and as in the Underlying Civil Action defeats the stated

9    purposes of the laws.

10   **III.    Compelling Production of Documents From *Cases Made Confidential By Law***

11   **        *Is a Crime.  Pen. Code, § 13303.***

12       Haynes and Judge Sotelo violated Penal Code section 13303 by compelling production of

13   documents in discovery *made confidential by law.*  Cal. Rules of Court, rule 2.503; MO. REV.

14   STAT. §§ 610.140, 610.120, 610.105; *State ex rel. Knight v. Barnes*, 723 S.W.2d 591, 592 (Mo.

15   Ct. App. 1987).  Judge Sotelo allowed Haynes to read these irrelevant and confidential records to

16   the jury in Opening Statement.  Haynes even argued in closing the plaintiff was guilty of the

17   dismissed charges that have been closed and *made confidential by law* for decades.  *Id.*

18       Missouri Revised Statute § 610.105 states (underline added), "If the person arrested is

19   charged but the case is subsequently nolle prossed, dismissed, … official records pertaining to the

20   case <u>shall thereafter be closed records</u> when such case is finally terminated."

21       Missouri Revised Statute § 610.120 states (underline added):  "All records which are

22   closed records shall be removed from the records of the courts, administrative agencies, and law

23   enforcement agencies which are available to the public and <u>shall be kept in separate records</u>

24   <u>which are to be held confidential</u>."

25        "It is, therefore, quite obvious that the intent of the legislature was to close these records

26   to the general public."  *State ex rel. Knight v. Barnes*, 723 S.W.2d 591, 592 (Mo. Ct. App. 1987).

27                With this background, the records of arrest, dismissal or nolle
                prossed <u>became closed</u> to all save the person charged. Clerks and
                judges were placed in an untenable position of not being able to
28              acknowledge existence of those records, even to themselves. … it is

17

apparent the word 'litigation' is meant to include only those proceedings tangentially related to the criminal process, and only those civil proceedings in which one of the designated bodies is a party to the action. ... <u>The word 'litigation' cannot be construed so broadly to include a civil action.</u>

*Id.* at 593 (underline added).

Judge Sotelo did the opposite and made a decades-old dismissed case in another state that utilized no fact-finding legal procedures prior to dismissal and was closed and made confidential by law the center of attention, even though the only issue was whether the statement that plaintiff had *criminal convictions for sex crimes with minors* was true or false, a legal question involving statutory interpretation for the court, which was essentially determined in Judicial Notice. Cal. Rules of Court, rule 2.503.

**IV.    Dismissed Charges Become Convictions in the Twilight Zone**

It goes without saying that in criminal law dismissed charges are not convictions. They are opposites. However, in the Twilight Zone of Department 40, Haynes argued "his plea simply avoided a trial, it did not render those charges null and void." (Opposition to Plaintiff's Motion for Summary Judgment or Motion for Summary Adjudication, page 7 lines 18-20.) This is absurd. The main purpose of a plea bargain is to render dismissed charges null and void. But in the Twilight Zone, the defendants waved a magical wand decades later in a different state and tried to convert dismissed charges in a *case made confidential by law* without any fact-finding legal procedures (no trial, discovery, depositions, affidavits, etc.) into criminal convictions in order to argue the defamatory statements in the Underlying Civil Action were true.

Instead of being an impartial, law-abiding jurist and stopping this unlawful and illogical insanity that turns laws and words upside down, Judge Sotelo embraced it and did the same. In a court ruling on Plaintiff's Motion for Summary Judgment (page 4) on or about February 2, 2021, Judge Sotelo created defamatory per se facts by stating that the plea to one count Invasion of Privacy "factually involved a 'sex crime' with a minor, i.e., Plaintiff recording himself having sex with at least one 17 year old."

How could a California judge decades later who did not know anyone or anything about a case dismissed and statutorily closed and confidential 25 years earlier in Missouri without any

18

1  fact-finding procedures know these alleged *facts*?  Judge Sotelo fabricated defamatory per se fake

2  facts in a judicial ruling decades later that when republished in an internet search *snipid* would

3  make the plaintiff appear as a pedophile guilty of dismissed charges.

4        No one would doubt the veracity of the words from a tribunal, and some states might even

5  allow comments from an authoritative source such as a tribunal to serve as a defense shield for

6  others to rely upon to repeat the false and defamatory per se words without liability.  Some states

7  already have such affirmative defenses for newspapers that rely upon other "reliable" sources.

8        Judge Sotelo's ruling makes him appear as the judge who adjudicated the case dismissed

9  in Missouri 25 years earlier.  His disparaging remarks were unnecessary because no matter what

10  Judge Sotelo or Haynes fabricated, it could not change the plaintiff's criminal record, which was

11  the issue.  Plaintiff addressed this in his Motion for Reconsideration filed February 18, 2021:

> By Defendant's rationale and what the Court appears to rely upon,
> Plaintiff would have to sue the Court for what the Ruling states is
> factually about dismissed charges twenty-five years later in order to
> avoid having that statement become accepted as true in the future.
> The Ruling now comes up on the top half of the first page of an
> internet search and references "child sexual abuse." (Plt Decl ¶ 5)
> Words like sex crimes with minors that have never appeared in any
> other document other than those invented by Defendant have now
> transformed into another charge that never even existed. (*Id*.) There
> was never any charge against Plaintiff, dismissed or otherwise, with
> the word minor used. (*Id*.) The situation this factually statement
> creates is like spreading a rumor with a can and a string from one end
> of a classroom to another.  But when a Court states something
> factually it carries far more weight as a "fact" than a newspaper
> article.  This is because people think the Court adjudicated the matter,
> which never happened twenty-five years ago, let alone now in
> another state.

21  In response to the plaintiff's objection, Judge Sotelo modified the language in his ruling but did

22  so with resistance, more evidence of malice.  Judge Sotelo resisted correcting defamatory

23  fabrications about a dismissed and closed case *made confidential by law* that was irrelevant

24  anyway.  Incredibly, while Judge Sotelo modified his words in this ruling, he inserted the same

25  defamatory statements in a subsequent ruling on a different motion.

26        Even if Judge Sotelo's statements about matters he knew nothing about were true, it could

27  not have changed the criminal record and would still be irrelevant because the issue was about

28  criminal convictions, not dismissed charges.  This evidence demonstrates Judge Sotelo's malice

1   because he intended to malign the plaintiff in the public court record and subsequently the

2   internet (worldwide web).  The Legislature enacted laws mandating dismissed cases be kept

3   *closed* and *confidential* to avoid such situations.   Mo. Rev. Stat. §§ 610.140, 610.120, 610.105;

4   *State ex rel. Knight*, 723 S.W.2d at 592.

5          **V.**       **Determining A Criminal Record Is a Matter of Law Involving Statutory**

6                  **Interpretation**

7        California law requires Courts determine criminal records.  "All questions of law

8   (including but not limited to questions concerning the construction of statutes and other writings,

9   the admissibility of evidence, and other rules of evidence) are to be decided by the court."  Evid.

10   Code, § 310(a).  "Interpretation of a statute presents a question of law."  *Journey v. State*, 895

11   P.2d 955, 957, fn. 5 (Alaska 1995).

12-15
> a defendant's criminal history … does not require the resolution of disputed facts. Instead, criminal history is the result of a complicated calculation of rules and statutory applications. ... The "fact" is the fact of the conviction, which is not a jury question. [Citation omitted.] The law is the proper application of the law to the fact of the defendant's criminal record … is not a factual matter for the jury and thus is properly determined by the … judge.

16   *State v. Van Buren*, 98 P.3d 1235, 1241 (Wash. Ct. App. 2004).

17        Nonetheless, Judge Sotelo submitted the question of whether the defendant's statement

18   was true or false to the jury because he wanted to create every opportunity for the plaintiff to lose.

19   It was impossible for either part of the statement to be true as a matter of law (regardless of

20   expungement) because Judicial Notice and Judge Sotelo's prior ruling on Plaintiff's Motion for

21   Summary Judgment concluded: 1) "Plaintiff did not have multiple convictions," and 2) "Invasion

22   of Privacy in Missouri is not a sex offense." (RJN Exhibits B-D & SSUF Nos. 2-4)

23        Likewise, Judge Sotelo's Ruling on Plaintiff's Motion for Reconsideration

24   "acknowledges… invasion of privacy, which is not multiple conviction, is not a sex crime and is

25   a statute that does not involve minors."

26        At trial, the plaintiff projected Missouri statutory code and chapters on the wall to prove to

27   jurors that Invasion of Privacy was in Chapter 565. Offenses Against A Person, not Chapter 566.

28   Sexual Offenses.  Whether the statement at issue regarding the plaintiff's criminal record was true

CIVIL COMPLAINT

1   or false involved statutory interpretation, making it a question of law the court must determine,

2   not a question of fact for a jury.  Cal. Evid. Code, § 310(a); *State v. Van Buren*, 98 P.3d 1235,

3   1241 (Wash. Ct. App. 2004).

4          Although the jury ruled in the plaintiff's favor concluding the defendant's defamatory

5   statement was false, Judge Sotelo should never have submitted this question of law to the jury.

6   The jury could no more change a criminal record than a jury could change a law.  A criminal

7   record is what it is; it is not a question of fact that could be interpreted differently, but is

8   something a jury could improperly analyze and determine.  Judge Sotelo should have answered

9   this question, which Judicial Notice already did, in the plaintiff's Motion for Summary Judgment,

10  or alternatively Summary Adjudication.

11         **VI.    Haynes Filed a Motion for Sanctions Because Plaintiff Filed a Motion for**

12                 **Summary Judgment or Adjudication and a Required Motion Seeking Court**

13                 **Order to Conduct Discovery of Defendant's Financial Condition**

14         It is unconscionable Haynes filed a Motion for Sanctions against the plaintiff for filing a

15  Motion for Summary Judgment, or alternatively Summary Adjudication (a commonly used legal

16  motion that should have prevailed) and because the plaintiff filed a Motion for Court Order to

17  Conduct Discovery of the Defendant's Financial Condition, a required motion under California

18  Civil Code section 3295(d) for plaintiffs seeking punitive damages.  Haynes' Motion for

19  Sanctions claimed the plaintiff's motions were frivolous and cost his client money, the same

20  client who later refused to end this litigation after the jury trial at no costs a guaranteed winner.

21  Ironically, sanctions are mandatory under the same statute Haynes used to file his frivolous

22  motion for sanctions.

23         In a mandatory mediation before trial, the defendant and Haynes made no offer to settle

24  other than to threaten the plaintiff that the defendant "is ready, willing so and able to pursue his

25  claim for abuse of process if this matter is pursued to trial."  Haynes still claims his actions were

26  "good lawyering."

27         **VII.   Judge Sotelo Was the Master of the Plaintiff's Claim**

28         Judge Sotelo prevented the plaintiff from showing the jury the Expungement Statute that

CIVIL COMPLAINT

states: "the effect of such order shall be to restore such person to the status he or she occupied prior to such arrests, pleas, trials, or convictions as if such events had never taken place." MO. REV. STAT. § 610.140.8.  Judge Sotelo violated this statute throughout the case by making Invasion of Privacy and irrelevant dismissed charges that were supposed to be statutorily closed and confidential the center of attention.  MO. REV. STAT. §§ 610.105, 610.120; *State ex rel. Knight v. Barnes* (Mo.Ct.App. 1987) 723 S.W.2d 591, 592.

Judge Sotelo censored the plaintiff from showing jurors declarations under penalty of perjury the defendant attached to legal briefs filed in the court record that admitted elements of the plaintiff's causes of action.

Judge Sotelo did not allow the plaintiff to show the jurors statutes that made dismissed charges closed and confidential because the jurors would have realized the bias, unfairness, censorship, erroneous rulings, and unlawful actions by the defendants.

Judge Sotelo did not allow the plaintiff to use discovery admissions by the defendant that established elements of the causes of action, despite the law requiring "Any matter admitted in response to a request for admission is conclusively established against the party making the admission."  Code Civ. Proc., § 2033.410.  "[A]ny admission made by a party under this section is binding."  *Id.*  "As a general rule an admission is conclusive in the action as to the party making it."  *Murillo v. Superior Court* (2006) 143 Cal.App.4th 730, 736.

On the flipside of the coin, Judge Sotelo permitted the defendant to introduce decades-old newspaper articles and highlight salacious and inflammatory allegations by newspaper reporters with no first-hand knowledge of anyone or anything, even though they were irrelevant to the criminal record at issue.  The articles were irrelevant and inflammatory quadruple hearsay that lacked any foundation or ability to cross-examine the writers from decades before that in fact stated the opposite of the defendant's defamatory statement, i.e., the articles stated the other charges were dismissed, not convictions.

To add insult to injury, Judge Sotelo allowed these inflammatory and irrelevant newspaper articles to be introduced through the plaintiff's cross-examination because the defendant was not present at trial, a ruling directly conflicting with the law requiring cross-examination be limited to

22

1  "the scope of the direct examination." Cal. Evid. Code § 773.  Essentially Judge Sotelo colluded

2  with Attorney Haynes to allow Haynes to testify at trial in the absence of his client and to

3  introduce salacious, inflammatory, and irrelevant newspaper articles during cross-examination of

4  the plaintiff, even though these matters were not raised in direct examination and therefore went

5  beyond the scope of the plaintiff's direct examination in violation of Evidence Code section 773.

6  Judge Sotelo turned laws upside down and backwards to achieve his bias.  The plaintiff was not

7  the master of his case; Judge Sotelo was the master of lawlessness.

8  **VIII.  Rejects Offer to End Litigation at No Cost A Guaranteed Winner**

9  In the Underlying Civil Action where liability should have been determined against the

10  defendant as a matter of law because neither part of the defamatory statement could have been

11  true because Judicial Notice conceded there were never multiple convictions and that Missouri

12  Invasion of Privacy is not a sex crime, the defendant rejected an offer after the jury trial to settle

13  at no cost a guaranteed winner.  Why?  To stand on a principle he was right?  Or because he had

14  nothing to lose when Judge Sotelo always ruled in his favor?  Even the jury found his statement

15  was false.  Now, years later, the case has reached new levels of wrongdoing and will likely

16  continue for many more.

17  
18  
19  > As any competent attorney is aware, access to the courts is not an end in itself but only one means to achieve satisfaction for a client. If this can be obtained without resort to the courts -- even without the filing of a lawsuit -- it is incumbent upon the attorney to pursue such a course of action first.

20  *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 577 *citing* ABA Code of

21  Prof. Ethics, canon 15; Cal. State Bar, Rules Prof. Conduct, rule 6-101(2).

22  **IX.  Haynes' Five-Months Late Response to Appellant's Proposed Settled**

23  **Statement on Appeal Fabricates Sex Crimes to Permanently Malign Plaintiff**

24  **Over The Internet and Prejudice the Court of Appeal**

25  The plaintiff filed and served Form APP-014 Appellant's Proposed Settled Statement

26  several times in the trial and appellate courts, beginning September 19, 2021 and again March 11,

27  2022.  Rule 8.137(e) of the California Rules of Court entitled "Respondent's Response to

28  Proposed Statement" requires: "Within 20 days after the appellant serves the proposed statement,

CIVIL COMPLAINT

the respondent may serve and file … Proposed amendments to the proposed statement." The deadline for Haynes to serve and file "Proposed amendments to the proposed statement" was March 31, 2022.  Haynes filed his Objection and "Proposed amendments to the proposed statement" September 12, 2022, over five months late, and only after Judge Sotelo scheduled a hearing sua sponte for September 30, 2022 several months late in order to nudge Haynes to object, even though California Rule of Court 8.137 states the Judge Sotelo should have certified the Proposed Settled Statement in the absence of a timely response.

Plaintiff objected to Haynes' response to Form APP-014 Appellant's Proposed Settled Statement because it was over five-months late and never requested an extension of time. Plaintiff did not read this response until the day of the hearing September 30, 2022 because "the rules which prescribe the necessary proceedings on appeal and the time within which the various steps shall be taken, are mandatory and should not be relaxed." *Estate of Wolper* (1956) 146 Cal.App.2d 249, 251.  "There is a correlative duty imposed upon counsel for respondent when the proposed statement has been filed. He has no right to propose amendments which he knows ought not to be allowed." *Sweet v. Markwart* (1953) 115 Cal.App.2d 735, 741-742. Respondent is "obligated to comply with the time limitations contained in the rules." *Id.* at 741.

The hearing on September 30, 2022 is when the plaintiff first became aware of this defamation per se by Haynes in his five-months late response to Form APP-014 Appellant's Proposed Settled Statement.

The plaintiff objected at the hearing on September 30, 2022 and demanded Judge Sotelo sanction Haynes and seal, redact, remove, or otherwise correct the defamatory content so it would not remain in the public court record.  It was agreed this language would be removed from the record and never be repeated.

**X.     Haynes Hijacks Plaintiff/Appellant's Settled Statement By Deceit Through An Unauthorized *Proposed Substitute* Still Not on the Court Docket**

Judge Sotelo's Minute Order from the hearing dated September 30, 2022 states: "Plaintiff's counsel shall incorporate Defendant's responses and file and serve a prosed final settled statement within 10 days."  The deadline for Plaintiff was October 10, 2022 and the next

24

1  hearing was October 11, 2022, which was continued to October 14, 2022.  On October 8, 2022, a

2  Saturday, days before the deadline, Haynes e-mailed an unauthorized (Hijacked) "proposed

3  substitute" via a backdoor e-mail to the trial court rather than the normal certified public

4  electronic filing system.  Haynes' e-mail to smcdept40@lacourt.org states:

5  > I received no proposed order from Mr. Henreid.  I am submitting the
6  > attached order as a proposed substitute.  I don't know if my electronic
   > filing will reach the court on time, so I am sending this directly to the
7  > department.  Please provide this to the judge for our hearing Monday
   > at 8:30 am.

8  Haynes' litigation strategy is trickery and deceit by implying the plaintiff missed the

9  deadline stating, "I received no proposed order from Mr. Henreid."  However, the deadline was

10  not until the following Monday, October 10, 2022.  Haynes' deceitful e-mail implies the plaintiff

11  was late and requests the e-mail be forwarded directly to the judge to minimize the chance a clerk

12  would reject his *proposed substitute* because it was not authorized by the September 30, 2022

13  Minute Order.  To this day, the Hijacked Settled Statement Haynes unlawfully submitted as a

14  *proposed substitute* has no filing entry on the trial court docket.

15  **XI.   Unauthorized (Hijacked) Settled Statement Repeats Defamation Despite**

16  **Objection and Agreement at September 30, 2022 Hearing**

17  The plaintiff did not read Haynes' *proposed substitute* in preparation for the hearings in

18  October 2022 because it was not authorized by Judge Sotelo's Minute Order dated September 30,

19  2022 and because Haynes never identified a Settled Statement in his Designation of Record.  The

20  plaintiff timely filed and served a Final Proposed Settled Statement in accordance with this

21  Minute Order, incorporating all of Haynes' Responses, except the defamation.

22  The plaintiff relied upon Judge Sotelo's Minute Order dated September 30, 2022 in not

23  reviewing Haynes' unauthorized *proposed substitute* submitted through a back channel e-mail

24  direct to the courtroom, not the normal e-filing procedure.  The plaintiff's reliance upon this

25  presumably fraudulent Minute Order was to his detriment and he has suffered damage as a result.

26  Had plaintiff known the true intent not to honor this Minute Order, the plaintiff would have

27  reviewed and objected to Haynes' unauthorized *proposed substitute* that still has no entry on the

28  trial court docket.

25

CIVIL COMPLAINT

1      Judge Sotelo certified Haynes unauthorized (hijacked) settled statement without any

2  notice, questions, argument, or objections, essentially by surprise, on or about October 11, 2022

3  stating I am going to certify the defendant's settled statement.  Then Judge Sotelo continued the

4  matter to October 14, 2022 for unknown reasons.  He already shut down any argument against his

5  certification of this *proposed substitute* without notice.  The docket still does not show this

6  proposed substitute (aka Hijacked Settled Statement) was ever filed.  Judge Sotelo then signed the

7  Hijacked Settled Statement October 31, 2022 and delivered it, along with the same defamatory

8  words previously objected to many times, to the Court of Appeal January 13, 2023.

9      Although Judge Sotelo did not permit any argument against the Hijacked Settled

10  Statement, it would have been a waste of time because Judge Sotelo always ruled adversely to the

11  plaintiff/appellant as the court record reflects.  The other reasons plaintiff/appellant did not read

12  this hijacked version until June 1, 2023 is because Form APP-014 Appellant's Proposed Settled

13  Statement, through its circuitous path, was already in the Record on Appeal, attached to a Motion

14  to Augment the Record on Appeal, which the Court of Appeal granted.  All the proceedings when

15  the worst defamation occurred were much adieu about nothing.  This is probably why Haynes and

16  Judge Sotelo went crazy, i.e., because they realized their plan of censoring my Settled Statement

17  failed because of greed.  Judge Sotelo should have not rejected the initial Form APP-014 because

18  then he could have censored the plaintiff/appellant.  While this designation should have been

19  granted it was within Judge Sotelo's discretion to reject it as late.  This forced the

20  plaintiff/appellant to file a Motion to Augment the Record on Appeal, which the Court of Appeal

21  granted.  This was the circuitous path of Form APP-014.  Another reason plaintiff did not read the

22  Hijacked Settled Statement until June 1, 2023 is because the plaintiff never cites or references the

23  Hijacked Settled Statement on appeal; reading it would have been duplicative and unnecessary.

24  Another reason is because Haynes' briefs are full of irrelevant red herrings and lies that only

25  distract and confuse the relevant issues, which causes further unnecessary resentment.  It would

26  have done no good wasting time correcting lies and irrelevant statements.  Finally, it was not

27  foreseeable that even an unethical attorney like Haynes would repeat such blatant defamation

28  regarding well settled facts in Judicial Notice and official government records after many

CIVIL COMPLAINT

objections and an agreement at the hearing September 30, 2022.

### XII.   Demand to Retract Defamatory Statements from Public Court Record

On October 11, 2022, the plaintiff e-mailed Haynes with the subject heading "Demand to Retract Defamatory Statements from Public Court Record" that states:

> mitigate your damages by retracting your defamatory statements from the public court record. If you refuse, it will just add more proof of your malice and abuse of process in attempting to use a litigation privilege to intentionally defame someone in the worst possible way by intentionally injecting defamatory content into a public court record that can easily leak onto the internet.  If someone reads a "snipid" as Google calls them from a court file where the attorney of record, an officer of the court, writes such statements, the public (myself included) would assume such statements were true.  Surely, no officer of the court, let alone the attorney of record in a case from start to finish would not write such statements unless they were true.

### XIII.   Criminal Acts and Deceiving Courts Is *Just Good Lawyering*

On October 11, 2022, Haynes did not respond with an apology or an offer to retract or correct his defamation.  Instead, he threatened sanctions:  "Rule 11 still exists, and given the absolute privilege, any action filed in federal court would face that motion immediately."  Haynes claimed his defamatory statements was *just good lawyering*:  "All I have ever done is successfully protect my client within the rules ….  My actions were not unethical, just good lawyering."

### XIV.   Plaintiff's Motion to Strike and for Sanctions

In response to Haynes refusal to retract his libelous statements, the plaintiff filed a Motion to Strike and for Sanctions in the trial court and a Motion for Sanctions in the appellate court that identified the words at issue by page and line number.  The Motion for Sanctions in the appellate court is pending.  These remedial actions toll statutes of limitations.

Incredibly, Haynes repeated the same defamation in his Opposition to the Motion to Strike and for Sanctions in the trial court and falsely claimed the plaintiff never identified the issue even though the motion Haynes was opposing spells out his defamation word for word and cites their page and line numbers.  In relying upon Haynes' Opposition brief, which he did not electronically serve the plaintiff as required until during oral argument, the new trial judge was duped by Haynes when she copy/pasted parts of his brief for the Background section of her tentative ruling. When alerted to the misrepresentation, the new judge modified the language in the ruling granting

CIVIL COMPLAINT

the Motion to Strike, which ordered the plaintiff to identify and redact the defamatory statements in the defendant's filed documents.

Plaintiff filed his Response to Court Order re Redactions in Motion to Strike on May 31, 2023 and discovered a few hours later for the first time on June 1, 2023 that Haynes unbelievably repeated his defamation in his Hijacked Settled Statement on Appeal, which Judge Sotelo accepted and certified without notice or argument October 11-14, 2022, and then signed October 31, 2022 and delivered to the Court of Appeal January 13, 2023.  On June 1, 2023, the plaintiff filed an updated Response to Court Order re Redactions in Motion to Strike to address the newly discovered defamation fabricated in the Hijacked (Unauthorized) Settled Statement for the Record on Appeal.

**XV.    New Trial Judge Stops and Redacts Lies**

Haynes did not oppose the last briefing in the trial court, Plaintiff's Response to Court Order Granting Plaintiff's Motion to Strike, that identifies 21 blatant lies in his Opposition to Plaintiff's Motion to Strike and for Sanctions that he did not electronically serve until during oral argument.  This does not include his misrepresentations and lies from throughout the Underlying Civil Action identified in the pending Motion for Sanctions in the Court of Appeal.

**PRAYER FOR RELIEF**

Plaintiff prays for not less than $1,000,000 for economic and non-economic damages, pain and suffering, and punitive damages according to proof at a trial by jury.

Plaintiff also seeks equitable and injunctive relief to compel the defendant to retract, redact, remove, strike, or otherwise correct the public court record, internet, any print record, and any digital platform containing his defamatory statements.

**CERTIFICATION AND NOTICE OF INTERESTED PARTIES**

The undersigned plaintiff in propria persona certifies no other persons or entities have a pecuniary interest in the outcome of this case.  This representation is made to enable the Court to evaluate possible disqualification or recusal.

**CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

28

knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers maybe served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

December 1, 2023                    Plaintiff In Propria Persona /s/ Paul Henreid, Esq.

29

CIVIL COMPLAINT